IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| JOY LOCKE-O'DELL, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) No. 12-2009-CM ) |
| GLOBAL CLIENT SOLUTIONS, LLC, et al., | ) ) ) ) |
| Defendants. | ) ) |

**MEMORANDUM AND ORDER**

Defendant Global Client Solutions, Inc. ("Global") removed this action to federal court and now moves this court for an order compelling arbitration under the Federal Arbitration Act, 9 U.S.C. §§ 1–16 ("FAA") (Doc. 12). The FAA allows a district court to compel arbitration when the court determines that: (1) a valid arbitration agreement exists between the parties, and (2) the dispute before it falls within the scope of the agreement. The agreement between plaintiff Joy Locke-O'Dell and Global includes a broad, unambiguous, and valid arbitration requirement. And plaintiff's claims against Global are within the scope of the arbitration requirement. Accordingly, the court grants Global's motion; stays the action pending arbitration as it relates to claims against defendant Global; and orders plaintiff and Global to proceed with arbitration in accord with the provisions of the arbitration clause. Because nothing has been presented to the court to compel staying the litigation against defendant World Law, those claims will proceed in this court.

**I.     Background**

Global asserts that plaintiff enrolled in a debt resolution program and defendants provided

her services in connection with that program.  Specifically, plaintiff contracted with defendant Orion Processing, LLC, d/b/a World Law ("World Law"), which provided her "bundled legal services to assist her in resolving her . . . unsecured consumer debt" of over $72,000.  Global serves as the processor of all the activity related to a special purpose bank account that plaintiff opened in connection with the debt resolution program.  Global, however, is not a party to the debt resolution plan, and does not negotiate any of its account-holders' debt.  Global is "a financial and technology services company that specializes in payment processing solutions for traditional banks," and is a Third Party Automated Clearing house ("ACH") sender.  As such, Global processes ACH transactions that the bank executes for its account holders.

Global asserts that, in connection with the services for which plaintiff contracted with World Law, she also signed Global's Agreement for transaction processing of her special purpose bank account.  She made periodic payments into her special purpose account from her primary bank account.  She then periodically authorized Global to process disbursements of funds to repay her debts and the costs associated with her World Law debt settlement program.

Plaintiff admits she "agreed to allow Global to create a special purpose account agreement that required her to set up an automatic payment transfer for her monthly payments" to Global and World Law.  (Doc. 1-1 at 12.)  However, she asserts that she believed she was contracting with a reputable law firm to help resolve her debts but that after learning she had been misled, she severed ties with defendants.  She asserts that Global is actually an unregistered debt management service and credit service organization.  She notes that Global is the sole mechanism for collecting and paying World Law for its purported services.  She contests that she authorized Global to process disbursements of funds to repay debts; she argues that she had no control over the special purpose

-2-

account and that no individual account actually existed. Her complaint contains sixteen counts, including alleged violations of the Kansas Credit Services Organizations Act and Kansas Consumer Protection Act.

## II.     Legal Standards

The FAA embodies the national policy favoring arbitration. *Hall Street Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576 (2008). Under the FAA, a district court should compel arbitration when (1) a valid arbitration agreement exists between the parties, and (2) the dispute before the court falls within the scope of the arbitration agreement. 9 U.S.C. § 2 ("A written provision . . . to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."); *id*. at § 3 ("If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending . . . shall . . . stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement . . . ."); *see also Olathe Senior Apts., L.P. v. Ace Fire Underwriters Ins. Co.*, No. 04-2346-CM, 2005 U.S. Dist. LEXIS 43449, at *11 (D. Kan. Sept. 30, 2005) (outlining two-step approach).

Thr FAA does not require parties to arbitrate when they have not agreed to do so; it requires the court to enforce agreements to arbitrate, like other contracts, in accord with their terms. "If a generally applicable state contract defense invalidates an arbitration agreement or if grounds exist at law or equity that would call for the revocation of any contract," the court will not compel arbitration under the agreement. *See Klima v. Evanglical Lutheran Good Samaritan Soc.*, No. 10-1390-JAR-JPO, 2011 WL 5412216, at *2 (D. Kan. Nov. 8, 2011) (citing *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 478 (1989)).

The court applies ordinary state-law principles that govern the formation and interpretation of contracts when evaluating whether the parties have agreed to arbitrate a particular dispute. *Hardin v. First Cash Fin. Servs., Inc.*, 465 F.3d 470, 475 (10th Cir. 2006); *Summit Contractors, Inc. v. Legacy Corner L.L.C.*, 147 F. App'x 798, 801 (10th Cir. 2005). This is a diversity action, so the court applies the choice of law rules of the forum state. *See N.Y. Life Ins. Co. v. K N Energy, Inc.*, 80 F.3d 405, 409 (10th Cir. 1996) ("In a diversity action . . . we apply the substantive laws of the forum state, including its choice of law rules."). Kansas is the forum state, and Kansas choice of law rules honor an effective choice of law by contracting parties. *Brenner v. Oppenheimer & Co.*, 44 P.3d 364, 374 (Kan. 2002). The agreement at issue in this case with regard to defendant Global includes a choice of law provision in favor of Oklahoma law, or the laws of the state in which the consumer resides—which in this case is Kansas. Although the parties do not specify which state's law they seek to apply, the court will look to Kansas law regarding the formation and interpretation of the arbitration agreement.[1]

## III.   Analysis

---

[1] The Client Service Agreement between plaintiff and defendant World Law also includes an arbitration clause, with a New York choice of law provision. (Doc. 1-3 at 26.) The signature page states that plaintiff "read, understand[s] and agree[s] with the above Service Agreement and [has] been provided a copy for my personal records." (Doc. 1-3 at 26.) *See Filho v. Safra Nat. Bank of N.Y.*, 797 F. Supp. 2d 289, 297–98 (S.D.N.Y. 2011) (rejecting plaintiff's argument that he did not receive or read the terms and conditions because "[d]irectly above Plaintiff's signature on the account application is an acknowledgment that he received, understood, and agreed to the [terms and conditions]"); *Brower v. Gateway 2000, Inc.*, 246 A.D.2d 246, 252 (N.Y. App. Div. 1998) ("That a consumer does not read the agreement or thereafter claims he or she failed to understand or appreciate some term therein does not invalidate the contract any more than such claim would undo a contract formed under other circumstances."). Defendant World Law has not sought to compel arbitration. *Robinson v. Food Serv. of Belton, Inc.*, 415 F. Supp. 2d 221 (D. Kan. 2005) (denying motion to compel arbitration in part because defendant's delay in raising the arbitration issue was inconsistent with the right to arbitrate).

-4-

The court has reviewed the contract and the arbitration agreement it contains. Specifically, the Special Purpose Account Agreement (Doc. 14-1 at 14–17) is a contract between Global and plaintiff. The plain and unambiguous language of the arbitration clause in the Agreement with Global includes "any controversy, claim or dispute between the parties arising out of or relating to this Agreement or the breach, termination, enforcement, interpretation or validity thereof, including the termination of the scope or applicability of this Agreement to arbitrate. . . ." This is a broad arbitration clause. *See, e.g., Brown v. Coleman Co.*, 220 F.3d 1180, 1184 (10th Cir. 2000) (explaining that arbitration clause including "all disputes or controversies arising under or in connection with this Agreement" is "the very definition of a broad arbitration clause"). The court concludes that the clause must be enforced. In reaching this conclusion, the court rejects the three arguments raised by plaintiff: (1) plaintiff was unaware of the contents of the agreement, and did not sign or receive a copy of the agreement; (2) the contract is illegal; and (3) the arbitration provision is unenforceable.

**1.    The Agreement Expressly States That Plaintiff Received The Agreement, and the Agreement Bears her Initials and Electronic Signature.**

In connection with the motion to compel, plaintiff asserts that she did not receive a copy of the agreement and that its contents were unknown to her at the time it was made. She states she did not execute or initial each page of the agreement, but that the agreement was signed "using an electronic signature that plaintiff did not sanction and would not have sanctioned if she were armed with the truth." (Doc. 16 at 3.)

But the express language of agreement contradicts plaintiff's argument. Specifically, the application and signature page of the Special Purpose Account Agreement clearly states that "the

-5-

Special Purpose Account is governed by the terms of this Agreement" and that she "is bound by all of its terms and conditions." (Doc. 14-1 at 16.) Plaintiff is bound by these statements despite her current arguments to the contrary. *Felling v. Hobby Lobby, Inc.*, No. 04-2374-GTV, 2005 U.S. Dist. LEXIS 6853, at *13 (D. Kan. Apr. 19, 2005) (noting that "a person who signs a written contract is bound by its terms regardless of his or her failure to read and understand its terms") (internal quotation omitted). The agreement is "DocuSigned" by plaintiff, and bears her initials on each page. Further, evidence offered by defendant establishes that a copy of the Special Purpose Account Agreement was mailed to plaintiff, along with a Welcome Letter from Global, shortly after she submitted her electronic application. (Doc. 14-2.) Plaintiff's argument is rejected.

**2.      Whether The Contract Is Illegal Is An Issue For The Arbitrator**

As the court understands it, plaintiff is asserting that defendants did not have the authority to perform the services they agreed to perform on her behalf. She argues that because the contract was "for an illegal act," "the entire contract between plaintiff[] and defendant is illegal." (Doc. 16 at 6.) She states she is "not necessarily challenging the agreement as a whole," but is challenging "whether defendants have the right to make such an agreement." (Doc. 16 at 6.)

A claim of fraud in the inducement that goes to the validity of the entire contract should be decided by the arbitrator. The court should only decide the issue if the defense goes to the arbitration clause alone. *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403–04 (1967); *see also Buckeye Check Cashing, Inc. v. Cardegna,* 546 U.S. 440, 445–46 (2006) ("[U]nless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance"); *Brooke Credit Corp. v. Buckeye Ins. Ctr.*, 563 F. Supp. 2d 1205, 1208 (D. Kan. 2008).

Although plaintiff tries to argue that her situation falls outside the Supreme Court's *Prima Paint* and *Buckeye* holdings, her challenge to the contract is similar to a claim of fraudulent inducement. And it is apparent that her fraud/illegality argument is not restricted to the arbitration clause but to the entire contract. Accordingly, the issue of whether or not the contract is valid or enforceable is to be resolved in arbitration—not in this court.

**3.      The Arbitration Clause is Enforceable**

In addition to arguing that the entire agreement is invalid or illegal, plaintiff also argues that the arbitration provision is unenforceable because it violates Kansas public policy in favor of protecting citizens from misleading, deceptive, unconscionable, and even criminal acts, and that a consumer cannot waive his or her rights under the Kansas Consumer Protection Act. She argues that enforcement of the provision would act as such a waiver because arbitration would effectively eliminate her right to a jury trial on her deceptive acts and practices claims; her right to seek punitive and other damages; and her right to seek attorney fees under the Kansas Consumer Protection Act and/or Kansas Credit Services Organization Act. Additionally, plaintiff argues the arbitration provision is unconscionable because it provides that the American Arbitration Association ("AAA") has the right to choose the arbitrator.

The court finds that these facts do not render the provision unenforceable. Upon review, the terms of the arbitration are relatively customer-friendly. The Agreement states the arbitration will be governed by the AAA's rules, and that the AAA will select the arbitrator. The terms of the agreement guarantee, however, that the arbitrator "shall be neutral and independent and shall comply with the AAA code of ethics." (Doc. 14-2 at 5.) The Agreement mutually binds plaintiff and Global to arbitrate all disputes arising under the contract. It notes that both parties are giving up their rights to a jury trial. While it states that the parties will share the cost of arbitration, defendant will pay the

-7-

consumer's share of any cost in excess of $1,000.  This includes equal cost-sharing of attorney's fees.  The provision does not purport to eliminate all appeal rights.  And the provision does not appear to restrict the arbitrator to grant plaintiff the same relief under the laws of Kansas that are available to plaintiff in this court.  The validity of other provisions, and of the contract as a whole, is for the arbitrator.

**IT IS THEREFORE ORDERED** that Defendant Global Client Solution, LLC's Motion to Compel Arbitration Pursuant to the Federal Arbitration Act (Doc. 12) is granted.

**IT IS FURTHER ORDERED** that this action, as it relates to claims against defendant Global, is stayed pending arbitration.  Litigation of plaintiff's claims against defendant World Law will proceed.

**IT IS FURTHER ORDERED** that plaintiff and defendant Global are to proceed with arbitration in accordance with the provisions of the arbitration clause.

Dated this 27th day of March, 2012, at Kansas City, Kansas.

s/ Carlos Murguia  
**CARLOS MURGUIA**  
**United States District Judge**
